RENDERED: APRIL 10, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0566-ME

M.L.D.[1]                                                                          APPELLANT


                        APPEAL FROM SHELBY FAMILY COURT
v.                   HONORABLE S. MARIE HELLARD, JUDGE
                             ACTION NO. 24-AD-00041


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; R.L.A; AND
L.A.D., A MINOR CHILD.                                                  APPELLEES

AND


                                NO. 2025-CA-0568-ME

M.L.D.                                                                             APPELLANT


                        APPEAL FROM SHELBY FAMILY COURT
v.                   HONORABLE S. MARIE HELLARD, JUDGE
                             ACTION NO. 24-AD-00042


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND

---

[1] Pursuant to Court of Appeals Administrative Order No. 2006-10, to protect the privacy of minors, we refer to parties in cases involving proceedings for the termination of parental rights ("TPR") by initials only.

FAMILY SERVICES; R.L.A.; AND
C.J.T.D., A MINOR CHILD                                        APPELLEES

AND

NO. 2025-CA-0570-ME[2]

M.D.F.                                                        APPELLANT

APPEAL FROM SHELBY FAMILY COURT
HONORABLE S. MARIE HELLARD, JUDGE
ACTION NO. 24-AD-00043

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; M.L.D.; AND
R.O.R.F., A MINOR CHILD                                        APPELLEES

AND

NO. 2025-CA-0572-ME

M.L.D.                                                        APPELLANT

                    APPEAL FROM SHELBY FAMILY COURT
v.                  HONORABLE S. MARIE HELLARD, JUDGE
                    ACTION NO. 24-AD-00043

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND

---

[2] Because this appeal involves the same nexus of facts and parties as the three actions brought by M.L.D., we have opted to resolve the cases via a single Opinion.

FAMILY SERVICES; M.D.F.; AND
R.O.R.F., A MINOR CHILD                                          APPELLEES

OPINION AND ORDER
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, ECKERLE, AND MOYNAHAN, JUDGES.

ECKERLE, JUDGE:  Appellant, M.L.D. ("Mother"), seeks review of the Shelby

Family Court's judgments terminating her parental rights to her three minor

children, and M.D.F. ("Father"[3]) appeals the judgment terminating his parental

rights to their child in common.  After careful review of the briefs, record, and law,

we affirm the Family Court's judgments and grant Mother's appointed counsel's

motion to withdraw.

## I.    Background Facts and Procedural History

The Cabinet became involved with these parties in May of 2020,

when the children were seven, six, and two years of age.  After investigating a

report that the home in which the children resided with Mother was dirty and that

Mother was using illegal substances, the Cabinet developed an in-home service

plan.  In August of 2020, the Cabinet filed dependency, neglect, and abuse

---

[3] Father is only biologically related to the youngest child, R.O.R.F.; however, for ease of reference, we will refer to him as Father without any distinction.  The older children's father did not participate in the action below and has not appealed the judgment terminating his parental rights.

("DNA") petitions alleging that Mother was not complying with the plan and that the children were therefore at risk of harm. The Cabinet was subsequently granted temporary custody of the children on the 12th of that month. Mother stipulated that her marijuana use placed the children at risk, and the Family Court adjudged that they were abused or neglected.

The Cabinet developed a case plan for reunifying the parties. It included Father in the case plan even though the DNA petition did not name him. The Family Court's approved plan required the parents to complete assessments for substance abuse, parenting, and mental health (with Mother additionally mandated to have an assessment for domestic violence) and to follow all provider recommendations therefrom. The Court additionally ordered Mother and Father to pay child support in the amounts of $375 and $206.50 per month, respectively.

In April of 2021, the Cabinet filed a motion to hold Mother in contempt, asserting that she was $1,994 in arrears on child support. Mother stipulated to contempt, and the Family Court sentenced her on November 10, 2021, to 179 days probated for two years on the condition that she pay child support as ordered plus an additional sum towards the arrearage. In April of 2022, the Cabinet filed a motion to hold Father in contempt, asserting that he was $3,005 in arrears. Father stipulated to contempt, and the Family Court sentenced him to 179

days conditionally discharged, after he paid $2,000 towards his arrearage, for two years so long as he remained current in his child support obligation.

On August 25, 2022, Mother regained sole custody of the children, although the Cabinet continued to monitor and work with the parties for almost one more year, until July of 2023. At that time, the Family Court revoked Father's conditional discharge after the Cabinet alleged that he was $2,747 in arrears on child support, and the Family Court found that he had the ability to meet his financial obligation but chose not to do so voluntarily.

Three months later, the Cabinet filed a second set of DNA petitions alleging that Mother had tested positive for methamphetamines and amphetamines and that the home was in disarray, with food and trash throughout, including the sleeping areas. The Cabinet did not name Father as a responsible party, but it noted that he was incarcerated and thus could not take custody of his child. The Court granted emergency custody to the Cabinet on October 20, 2023, and the children have thereafter remained in foster care. Mother stipulated to the allegations, and the Family Court adjudged that the children were abused or neglected.

The Cabinet developed a new case plan to aid Mother and Father in reunifying with the children, and the Family Court approved this plan at the dispositional hearing. The plan required Mother and Father to maintain a clean

and sober lifestyle (Father having tested positive for benzodiazepines and cocaine in December of 2023), submit to random drug screens, complete protective parenting classes, and undergo substance abuse and mental health assessments and follow all provider recommendations. It further mandated that Mother maintain stable housing and employment and participate in consistent and appropriate visitation with the children.

On September 27, 2024, the Cabinet filed the underlying TPR petitions, and on March 4, 2025, the Family Court held a final hearing. The assigned social worker testified at that hearing that the Cabinet had placed the children together in foster care; the children had no ongoing, severe physical health needs; and the Cabinet had met individual mental health needs with medication and therapy. The social worker stated that the Cabinet intended to place the Children with a maternal aunt, who had recently come forward and was in the process of becoming an approved foster parent to adopt the children. The social worker acknowledged that the children were well bonded with Mother and Father[4] and that the supervised, bi-weekly visits with the children went consistently well. She noted that Mother, and Father especially, brought food and gifts for the children during visits.

---

[4] Father only had visitation with his child, but he brought gifts for all three children.

The social worker stated, however, that neither Mother nor Father had completed the most recent case plan. She reported that Mother had undergone her required assessments. However, Mother had failed to provide proof that she was attending mandated Narcotics Anonymous meetings or individual counseling sessions; she had not completed protective parenting classes; she did not have appropriate housing for the children; and she was unemployed. The social worker averred that Mother sporadically attended visitation with her children until October 2025 and that her visits had been briefly suspended in the fall of 2024 after she missed several in a row. Similarly, the social worker noted that, until January of 2025, when Mother entered inpatient substance-abuse treatment at Volunteers of America ("VOA"), Mother had inconsistently complied with her random drug-screening requirement, resulting in three[5] presumptive-positive tests. The social worker acknowledged that Mother had tested negative for illegal substances since her initial screen in October of 2023, which had showed a positive result for methamphetamines and amphetamines.

In her testimony at the same hearing, Mother took responsibility for her poor decisions and asked for additional time to correct her mistakes. She

---

[5] In her testimony, the social worker only specifically identified one drug screen in October of 2024 that Mother had failed to appear for post-petition. She otherwise, and only generally, indicated that Mother was unsystematic. The Cabinet introduced records of Mother's drug screens showing two missed tests in the spring of 2024, but there are no records after September 6, 2024.

attributed her non-compliance with the case plan to the fact that after the children were removed from her custody, she entered into a year-long relationship with a domestically violent partner who withheld access to her money and vehicle; but she asserted that she had since escaped the relationship. Mother explained that she was benefiting from inpatient treatment at VOA, which she explained was a rehabilitation program for mothers. She testified that VOA diagnosed her with post-traumatic stress disorder, taught her coping skills to prevent relapse, and bettered her self-understanding. Mother reported that she would graduate from treatment in the following month; VOA would help her locate housing and employment; and she would then be able to complete the protective parenting classes. Mother argued that the termination of her parental rights would hurt the children, who had always been with her, although she acknowledged that the children needed consistency in their home.

Regarding Father's progress, the social worker stated that the Cabinet had made referrals in November of 2023 for engaging in parenting classes and assessments for substance abuse and mental health. She reported that Father was still participating in parenting classes; he was required to retake his substance abuse assessment after he was initially untruthful about his history of drug use; he had only started his substance abuse services in October of 2024; and he provided no proof that he had completed his mental health assessment. The social worker

acknowledged that Father had tested negative for illegal substances since his positive drug screen in December 2023, but she stated that he had missed two[6] tests that were deemed presumptively positive. Finally, the social worker testified that Father had always attended his bi-weekly supervised visits with his child, and he had appropriate housing with the child's paternal grandmother.

In his testimony, Father attributed his failure to complete his case plan to being incarcerated (although he was released in November 2023), his demanding work schedule, and his difficulties with reading and writing (specifically regarding the protective parenting classes). He stated that in the months leading up to the March 2025 hearing, he had completed his mental health assessment; he was attending the recommended individual therapy sessions; and he was switching from group to individual parenting classes to overcome his learning difficulties. He acknowledged that his child had never lived with him and that he could not explain the reasons that he was not given custody after the first DNA proceeding. Father nonetheless asserted that he had raised the child and claimed that he had bought her everything she wanted or at least needed, and that the termination of his parental rights was not in the child's best interest.

---

[6] The Cabinet introduced a record of Father's drug screens that showed that he had tested a week late in January of 2024 and had failed to test in May of the same year.

On April 3, 2025, the Family Court issued its judgment terminating Mother's maternal and Father's parental rights. Mother appealed. In accordance with *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App. 2012), her counsel thereafter filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 12 L. Ed. 2d 493 (1967), attesting that no meritorious issues exist to present to this Court; her advocate also filed a motion to withdraw as counsel on appeal. The Family Court afforded Mother an opportunity to file a brief *pro se*, but Mother declined to do so. Father also appealed as to his child and filed a brief on the merits. We will introduce additional facts as they become relevant.

## II.    Standard of Review

We review the Family Court's findings of fact under the clearly erroneous standard. Kentucky Rule of Civil Procedure ("CR") 52.01. If supported by substantial evidence, we are obligated to give great deference to the Family Court's findings. *D.G.R. v. Commonwealth, Cabinet for Health and Family Services*, 364 S.W.3d 106, 113 (Ky. 2012). However, we review *de novo* the application of the law to those facts. *Id.* Additionally, specific to Mother, when appointed counsel files an *Anders* brief, the Court must "independently review the record and ascertain whether the appeal is, in fact, void of nonfrivolous grounds for reversal." *A.C.*, 362 S.W.3d at 372.

-10-

### III. Analysis

Involuntary TPR actions are governed by Kentucky Revised Statutes ("KRS") 625.090. TPR may be granted only if the Family Court finds that a three-pronged test has been met by clear and convincing evidence. *Id*. First, the children must be deemed abused or neglected as defined by KRS 600.020(1). KRS 625.090(1)(a). Second, the Family Court must find the existence of at least one of the statutory grounds for termination listed in KRS 625.090(2). And third, termination must be found to be in the best interest of the children after consideration of the factors listed in KRS 625.090(3). We will review each prong in turn.

As Father noted, the Family Court's determinations in the DNA proceedings pertained solely to Mother. However, as permitted by KRS 625.090(1)(a)2., and as part of the underlying TPR proceedings, the Family Court independently determined that the children were abused or neglected. Specifically, the Family Court found that Mother and Father had abused or neglected the children by failing to make sufficient progress towards identified goals in the Cabinet's Court-approved treatment plan that would have permitted the children to be placed in their care, resulting in the children's being in foster care for 15 out of the most recent 48 months, and thus satisfying KRS 600.020(1)(a)9. The Family Court's finding is supported by the uncontested evidence that Mother and Father

-11-

made no significant progress towards the case plan's tasks until October of 2024, which was one year after the children had been placed in foster care. The finding was further bolstered by uncontroverted evidence that Mother and Father had not completed their plans by the time of the TPR hearing in March of 2025, which more than satisfied the 15-month requirement. Accordingly, the Family Court did not err, and the first prong has been satisfied regarding TPR for both Mother and Father.

We turn now to the second prong, the existence of a statutory ground. Though KRS 625.090(2) only requires that one of the listed statutory grounds exists to terminate parental rights, the Family Court found that the Cabinet had proven three separate grounds. Specifically, the Family Court found that: (1) Mother and Father had failed to provide parental care and protection for the children for six months with no reasonable expectation of improvement, KRS 625.090(2)(e); (2) Mother and Father had continuously or repeatedly failed, for reasons other than poverty alone, to provide essential food, clothing, shelter, medical care, or education reasonably necessary and available for the children's well-being with no reasonable expectation of significant improvement in the immediately foreseeable future, KRS 625.090(2)(g); and (3) the children have been in foster care for 15 cumulative months out of the 48 months preceding the filing of the TPR petitions, KRS 625.090(2)(j).

The Family Court's third finding as to the second prong is supported by conclusive evidence that the children had been in foster care for 34 cumulative months out of the 48 months preceding the September 27, 2024, filing of the underlying TPR petitions; this timeline is more than twice the required period. Thus, the second prong of KRS 625.090 has been satisfied for both Mother and Father, and we need not consider Father's argument regarding the sufficiency of the Family Court's alternative findings.

Finally, we will address the third prong, whether the termination of Mother's and Father's parental rights is in the children's best interest. As required by statute, the Family Court analyzed the six factors set out in KRS 625.090(3),[7]

---

[7] The factors are:

> (a) Mental illness[,] intellectual disability, or disability [that] renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child[ren] for extended periods of time;
>
> (b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;
>
> (c) . . . [W]hether the cabinet has, prior to the filing of the petition[, m]ade reasonable efforts as defined in KRS 620.020 to reunite the child[ren] with the parents . . . [;]
>
> (d) The efforts and adjustments the parent has made in his or her circumstances, conduct, or conditions to make it in the child[ren]'s best interest to return [them] to [their] home within a reasonable period of time, considering the age of the child[ren];
>
> (e) The physical, emotional, and mental health of the child[ren,] and the prospects for the improvement of the child[ren]'s welfare if termination is ordered; and

making detailed findings as to each, before it determined that granting the TPR was in the children's best interest.

Specifically, the Family Court found that the Cabinet had made reasonable efforts to reunify Mother and Father with the children and that there were no additional services that would permit reunification within a reasonable period considering the ages of the children, who were then 11, 10, and 6 years of age. The Family Court acknowledged the specific efforts that Mother and Father had made in completing their case plans. However, the Family Court was unpersuaded that this only recent progress demonstrated a long-term change permitting reunification with Mother or an initial grant of custody to Father within a reasonable time considering the significant period that both Mother and Father had failed to make any real progress at all. The Family Court noted that the children had been in foster care for approximately four out of the last five years (over half of the youngest child's life). The Family Court further found that the children's needs had been met by the Cabinet and that their welfare would improve if TPR were granted, citing the Cabinet's intention to have the children be adopted by their maternal aunt. Finally, the Family Court found that both parents had been in arrears on their child-support obligations.

---

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

Father argues generally that the record fails to support the Family Court's best-interest determination by clear and convincing evidence. We are unconvinced. The Family Court's multiple, detailed findings are all supported by the evidence. They include specifically the neglect of the children; the efforts of Mother, Father, and the Cabinet to reunify the family safely; the children's wellbeing and their prospects for achieving permanency through adoption; and Mother's and Father's non-compliance with their support obligations. We recognize that the Family Court "has substantial discretion in determining the best interest[] of the child[ren] under KRS 625.090[(3).]" *D.G.R.*, 364 S.W.3d at 112. A Court abuses its discretion if its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Having reviewed the record, we conclude that the Family Court did not abuse its discretion in determining that it was in the children's best interest to terminate Mother and Father's parental rights to them.

Finally, Father asserts that the Family Court's conclusion of law that granting TPR was in the children's best interest was insufficient because it failed to reference specifically any findings of fact in support. This unsupported contention is wholly without merit. A conclusion of law need not recite the Court's previously made findings of fact to be valid. *See* CR 52.01 ("In all actions tried upon the facts without a jury[,] the court shall find the facts specifically and state

-15-

separately its conclusions of law thereon[.]"). Moreover, the alleged failure amounts to, at most, harmless error, which would afford Father no relief. *See* CR 61.01 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

## IV. Conclusion

For the foregoing reasons, the Shelby Family Court's orders are AFFIRMED and Mother's appointed counsel's motion to withdraw is GRANTED.

ALL CONCUR.

ENTERED: _April 10, 2026____

HON. AUDRA J. ECKERLE
JUDGE, COURT OF APPEALS

BRIEF FOR APPELLANT M.L.D.:

Michael G. Sims
Louisville, Kentucky

BRIEF FOR APPELLEE CABINET FOR HEALTH AND FAMILY SERVICES, COMMONWEALTH OF KENTUCKY, IN 2025-CA-0566-ME, 2025-CA-0568-ME, AND 2025-CA-0572-ME:

Kevin Martz
Covington, Kentucky

BRIEF FOR APPELLANT M.D.F.:

Erin R. Pippin
Shelbyville, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES, COMMONWEALTH OF
KENTUCKY IN 2025-CA-0570-ME:

Erika Priddy
Elizabethtown, Kentucky